Cynthia Lee DAWSON–AUSTIN,
Petitioner,

v.

William Franklin AUSTIN, Respondent.

No. 96–0442.

Supreme Court of Texas.

Argued April 23, 1997.

Decided Feb. 13, 1998.

Rehearing Overruled July 3, 1998.

320 ■ ▆▆▆▆▆▆▆▆▆▆▆▆▆

David L. Evans, Jeffrey H. Kobs, Thomas M. Michel, Fort Worth, for petitioner.

Richard R. Orsinger, San Antonio, M.J. (Ike) Vanden Eykel, Dallas, John J. Sampson, Russell J. Weintraub, Austin, Harry L. Tindall, Houston, for respondent.

HECHT, Justice, delivered the opinion of the Court in which PHILLIPS, Chief Justice, GONZALEZ, SPECTOR, OWEN, and HANKINSON, Justices, joined.

The issues we address in this divorce action are whether the district court had in personam jurisdiction over the wife, and if not, whether the court nevertheless had jurisdiction to divide the marital estate. The court of appeals upheld personal jurisdiction. 920 S.W.2d 776. We disagree.

**I**

Since 1970, William Franklin Austin has been the president, chief executive officer, sole director, and sole stockholder of Starkey Laboratories, Inc., a Minnesota corporation in the business of manufacturing and distributing hearing aids. In 1977, Austin met Cynthia Lee Dawson at a seminar in Oregon, where she was living, and persuaded her to come to work for Starkey at its headquarters in Minnesota. Austin was 35 years old and divorced, and Dawson was 30 years old and separated from her husband. Dawson soon moved into Austin's Minnesota home and continued working for Starkey. On a business trip to China in 1980, Austin and Dawson recited marriage vows in a Beijing restaurant. Two years later they filed a marriage certificate in Minnesota. At some point Dawson assumed the surname, Dawson–Austin.

Dawson-Austin worked for Starkey until shortly after she and Austin separated in 1992. Over the years the business had grown. In 1980 Starkey was worth about $1.5 million with some $12 million in net revenues. By 1992 the company had become the second largest manufacturer of hearing aids in the world with sales totaling more than $200 million and a net worth of at least $40 million.

Throughout the marriage the couple's principal residence was in Minnesota, although they also owned homes elsewhere, including

one they acquired in California in 1984. They never resided in Texas, and neither of them ever came to the state except on business, and then only a few times. When they separated in February 1992, Dawson–Austin was living in their California home, and she remained there. Austin moved to Texas on March 10. On April 10 Dawson–Austin filed for divorce in California but did not serve Austin until October 16. Austin filed for divorce in Texas on September 10, the first day he could do so under Texas law, TEX. FAM.CODE § 6.301 (formerly TEX. FAM.CODE § 3.21), and served Dawson–Austin four days later.

Dawson–Austin filed a special appearance and an amended special appearance, both of which the district court overruled. Dawson–Austin requested the court in dividing the couple's property to apply Minnesota law, under which she contends she would be entitled to a part of the increase in .value of petitioner's Starkey stock attributable to the efforts of either spouse. The court refused and instead applied Texas law, holding that the stock was Austin's separate property subject only to any right of reimbursement of the community estate. The district court also struck Dawson–Austin's two expert witnesses retained to testify on the value of the community and its right of reimbursement, on the grounds that they were not timely identified in discovery. In a bench trial, Austin stipulated to Dawson–Austin's valuation of the community estate at $3,750,000. The court awarded Dawson–Austin 55.59% of the community—a little over $2 million.

Dawson–Austin appealed. The court of appeals in its initial opinion reversed the decree, holding that Minnesota law should have been applied in dividing the marital estate. On rehearing, however, a divided court of appeals affirmed the decree in all respects. 920 S.W.2d 776.

## II

We first consider whether, as a matter of procedure, Dawson–Austin made a general appearance in the case.

Dawson–Austin filed *pro se* a single instrument including a special appearance, a motion to quash service of citation, a plea to the jurisdiction of the court, a plea in abatement, and subject to all of the above, an original answer. Only the answer was expressly made subject to the special appearance; the motion and pleas were not. The instrument contained a verification of the facts and allegations stated in each component of the instrument except the special appearance. Dawson–Austin contends that the failure to include the special appearance in the verification was a typographical error. The district court overruled Dawson–Austin's special appearance because it was not sworn as required by Rule 120a(1), TEX.R. CIV. P., and because a motion to quash service of citation, plea to the jurisdiction, and plea in abatement, all included in the same instrument with the special appearance, were not expressly made subject to the special appearance.

The day after the court's overruling of the special appearance, Dawson–Austin filed a motion for reconsideration and an amended special appearance. The court denied the amended special appearance "on the merits", in the court's words, and did not rule on the motion to reconsider.

The court of appeals held that Dawson–Austin's special appearance was properly overruled because it was unsworn. The court did not consider whether the other pleadings in the same instrument should have been expressly subjected to the special appearance. 920 S.W.2d at 782. The court also held that Dawson–Austin waived her amended special appearance because, before it was filed, Dawson–Austin argued her motion to quash and did not object to the district court's consideration of it. 920 S.W.2d at 782–783.

Austin argues that there are yet other reasons, in addition to those given by the lower courts, for concluding that Dawson–Austin made a general appearance in the proceeding. We address each of these arguments in turn.

### A

■ As the lower courts both held, an unsworn special appearance does not comply with Rule 120a(1), TEX.R. CIV. P., and thus is

ineffectual to challenge in personam jurisdiction. The lower courts also held, however, that the lack of verification can be cured by amendment. Austin argues that an unsworn special appearance cannot be cured and is itself a general appearance. Austin's argument is contrary to the express provision of Rule 120a(1) that a special appearance "may be amended to cure defects". By "cure", the rule means to restore the special appearance. The rule does not limit the kinds of defects that can be cured. The absence of a verification is such a defect, and an amendment that adds a verification cures the special appearance. Every court that has considered the issue agrees. *See Villalpando v. De La Garza*, 793 S.W.2d 274, 275–276 (Tex.App.—Corpus Christi 1990, no writ); *Carbonit Houston, Inc. v. Exchange Bank*, 628 S.W.2d 826, 828 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Stegall & Stegall v. Cohn*, 592 S.W.2d 427, 429 (Tex.App.—Fort Worth 1979, no writ); *Dennett v. First Continental Inv. Corp.*, 559 S.W.2d 384, 385–386 (Tex.App.—Dallas 1977, no writ).

■ Austin argues, alternatively, that even if an unsworn special appearance can be cured by amendment, the amendment must be filed before the special appearance is ruled on. This argument, too, finds no footing in Rule 120a(1). The rule simply does not require that an amendment be filed before a ruling on the special appearance, as long as the amendment is filed before there is a general appearance. *See Dennett*, 559 S.W.2d at 386 ("[T]he crucial focus is on the *allowance* of amendment, and the *timing* of the amendment is not determinative.") (emphasis in original).

■ Austin's arguments are not only contradicted by both the language and silence of Rule 120a, they misperceive what constitutes a general appearance. One court has explained:

A party enters a general appearance whenever it invokes the judgment of the court on any question other than the court's jurisdiction; if a defendant's act recognizes that an action is properly pending or seeks affirmative action from the court, that is a general appearance.

*Moore v. Elektro–Mobil Technik GmbH*, 874 S.W.2d 324, 327 (Tex.App.—El Paso 1994, writ denied). Another court has stated the same proposition in the negative:

"[A]lthough an act of defendant may have some relation to the cause, it does not constitute a general appearance, if it in no way recognizes that the cause is properly pending or that the court has jurisdiction, and no affirmative action is sought from the court."

*Investors Diversified Servs., Inc. v. Bruner*, 366 S.W.2d 810, 815 (Tex.Civ.App.—Houston 1963, writ ref'd n.r.e.) (quoting 6 C.J.S. *Appearances* § 13 (19__)); *see also Letersky v. Letersky*, 820 S.W.2d 12, 13 (Tex.App.—Eastland 1991, no writ); *United Nat'l Bank v. Travel Music, Inc.*, 737 S.W.2d 30, 32–33 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.). These courts have accurately restated the principle underlying a general appearance. An unverified special appearance neither acknowledges the court's jurisdiction nor seeks affirmative action. While it cannot be used to disprove jurisdiction, it certainly does not concede it.

■ Thus, Dawson–Austin did not enter a general appearance by filing an unsworn special appearance or by amending it only after it was overruled.

**B**

■ Austin argues that Dawson–Austin made a general appearance by filing a motion to quash service, a plea to the jurisdiction, and a plea in abatement, all in the same instrument with the special appearance and all following the special appearance in the instrument, but none expressly made subject to the special appearance. The district court agreed with this argument; the court of appeals did not address it. The argument is contrary to Rule 120a, which states: "a motion to transfer venue and any other plea, pleading, or motion may be contained in the same instrument or filed subsequent thereto without waiver of such special appearance". The rule makes matters in the same instrument and subsequent matters subject to the special appearance without an express statement to that effect for each matter.

A few courts have referred to other matters being made subject to a special appearance but do not hold that "subject to" language is required to avoid waiver. *See International Turbine Serv., Inc. v. Lovitt*, 881 S.W.2d 805, 808 (Tex.App.—Fort Worth 1994, writ denied); *Koch Graphics, Inc. v. Avantech, Inc.*, 803 S.W.2d 432, 433 (Tex. App.—Dallas 1991, no writ); *Stegall & Stegall*, 592 S.W.2d at 429; *Frye v. Ross Aviation, Inc.*, 523 S.W.2d 500, 502 (Tex.Civ. App.—Amarillo 1975, no writ). Only two courts have addressed whether "subject to" language is required. In *Antonio v. Marino*, 910 S.W.2d 624, 629 (Tex.App.—Houston [14th Dist.] 1995, no writ), the court held that filing a stipulation without making it subject to the special appearance did not waive the special appearance. In *Portland Sav. & Loan Ass'n v. Bernstein*, 716 S.W.2d 532, 534–535 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1200, 89 L.Ed.2d 313 (1986), the court held that motions for sanctions and to disqualify counsel that were not filed subject to the special appearance did not "comply with Rule 120a" and therefore constituted a general appearance. *Portland* is contrary to the plain language of Rule 120a and to that extent is overruled.

Because Dawson–Austin's motion and pleas fully complied with Rule 120a, they did not constitute a general appearance.

### C

The hearing on Dawson–Austin's special appearance, motion to quash service of process, plea to the jurisdiction, and plea in abatement was requested by Austin, not Dawson–Austin, because he wished the Texas court to proceed before the California court. As Austin's counsel told the district court, "we can't protect ourselves against the California lawsuit if we don't proceed today." Dawson–Austin did not ask the district court for a hearing on any of the matters she filed. On the contrary, Dawson–Austin filed a motion for continuance the day of the hearing on the grounds that she had not been given the requisite notice for the hearing, her counsel had just been hired to make an appearance and he was in a jury trial at the time of the hearing, discovery was needed on the special appearance, and discovery was needed on the motion to quash. Dawson–Austin's counsel reurged the motion for continuance throughout the hearing, and also requested a postponement because of Austin's and Dawson–Austin's unavailability to testify. The district court denied the continuance.

Austin argues that Dawson–Austin's motion for continuance was not made subject to the special appearance and was therefore a general appearance. The district court appears to have rejected this argument, and the court of appeals did not address it. Austin's argument is incorrect for several reasons. First, as already discussed, Rule 120a expressly states that pleadings and motions may be "filed subsequent [to a special appearance] without waiver of such special appearance". Dawson–Austin's motion for continuance was filed subsequent to her special appearance and thus, by the plain language of the rule, was not a general appearance. Second, the motion for continuance did not request affirmative relief inconsistent with Dawson–Austin's assertion that the district court lacked jurisdiction, which, as we have noted, is the test for a general appearance. Rather, the motion asked the court to defer action on all matters. Third, the motion was particularly appropriate, given that Austin, not Dawson–Austin, set the matters for hearing. Dawson–Austin was obliged to request that hearing of her motion and pleas be deferred until after the special appearance. Rule 120a(2) states: "Any motion to challenge the jurisdiction provided for herein shall be heard and determined before a motion to transfer venue or any other plea or pleading may be heard." She could not request a postponement of the special hearing without also requesting a postponement of her other matters on which Austin, not Dawson–Austin, had requested a hearing. Dawson–Austin was also entitled to seek a postponement of the special appearance hearing until she could complete discovery, as expressly permitted by Rule 120a, and she was entitled to ask for more time for discovery on her motion to quash, provided she did not attempt to take that discovery before the special appearance was decided.

Dawson–Austin was entitled to request more time to prepare for the special appearance hearing that Austin set. Her request to postpone consideration of her other matters was required if the special appearance hearing were to be delayed. Dawson–Austin's motion for continuance in no way constituted a general appearance.

### D

Both Dawson–Austin's special appearance and her amended special appearance stated: "This special appearance is made to the severable claim asserted by BILL wherein BILL seeks a division of the parties' property." In other words, Dawson–Austin specially appeared only with respect to the claim for division of the marital estate, not the claim for divorce. (Since the couple had no children, these were the only two claims in the proceeding.) Rule 120a permits a special appearance to be made "as to an entire proceeding or as to any severable claim involved therein." It is well settled in this State that the division of a marital estate is not a claim severable from the rest of a divorce proceeding. TEX. FAM.CODE § 7.001 ("In a decree of divorce or annulment, the court *shall* order a division of the estate of the parties ..." (emphasis added)) (formerly TEX. FAM.CODE § 3.63(a)). *See, e.g., Hollaway v. Hollaway,* 792 S.W.2d 168, 170 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Vautrain v. Vautrain,* 646 S.W.2d 309, 314 (Tex.App.—Fort Worth 1983, writ dism'd). Thus, Austin argues that Dawson–Austin's special appearance to a non-severable portion of the proceeding constituted a general appearance.

The cases that hold adjudication of divorce and division of the marital estate to be non-severable claims all do so in the context of Rules 41 ("Misjoinder and Non–Joinder of Parties"), 174 ("Consolidation; Separate Trials"), and 320 ("Motion [for New Trial] and Action of Court Thereon"), TEX. R. CIV. P. *See, e.g., Brown v. Brown,* 917 S.W.2d 358, 360–365 (Tex.App.—El Paso 1996, no writ) (McClure, J., concurring); *Biaza v. Simon,* 879 S.W.2d 349, 355 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Hollaway,* 792 S.W.2d at 170; *Seibert v. Seibert,* 759 S.W.2d 768, 769–770 (Tex.App.—El Paso

1988, writ denied); *Dewey v. Dewey,* 745 S.W.2d 514, 516 (Tex.App.—Corpus Christi 1988, writ denied); *Odom v. Odom,* 683 S.W.2d 135, 137 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.); *Vautrain,* 646 S.W.2d at 313–317; *Underhill v. Underhill,* 614 S.W.2d 178, 181 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); *In re Marriage of Johnson,* 595 S.W.2d 900, 902–904 (Tex.Civ.App.—Amarillo 1980, writ dism'd w.o.j.); *Garrison v. Texas Commerce Bank,* 560 S.W.2d 451, 453–457 (Tex.Civ. App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.); *Reed v. Williams,* 545 S.W.2d 33, 34 (Tex.Civ.App.—San Antonio 1976, no writ); *Angerstein v. Angerstein,* 389 S.W.2d 519, 520–521 (Tex.Civ.App.—Corpus Christi 1965, no writ).

No case holds that claims of divorce and division of property do not involve severable *jurisdictional* issues. The United States Supreme Court recognized long ago that a court could have jurisdiction to grant a divorce—an adjudication of parties' status— without having jurisdiction to divide their property—an adjudication of parties' rights. *Estin v. Estin,* 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948). The rule has been recognized in Texas, as one court has explained:

> Where the trial court in a divorce proceeding has no personal jurisdiction over the respondent, the trial court has the jurisdiction to grant the divorce, but not to determine the managing conservatorship of children or divide property outside the State of Texas. *Comisky v. Comisky,* 597 S.W.2d 6, 8 (Tex.Civ.App.—Beaumont 1980, no writ). It may also lack jurisdiction to divide property within the state. *See Shaffer v. Heitner,* 433 U.S. 186, 212, 97 S.Ct. 2569, 2584, 53 L.Ed.2d 683 (1977).

*Hoffman v. Hoffman,* 821 S.W.2d 3, 5 (Tex. App.—Fort Worth 1992, no writ). The court in *Hoffman* held that a special appearance directed to an entire divorce proceeding should have been sustained only as to the claim for division of property:

> [T]he trial court erred in dismissing [the husband's] divorce petition for want of jurisdiction, even though it might not have jurisdiction to deal with the property of the parties. The special appearance

should only have been granted to the extent of the trial court's recognition that it does not have personal jurisdiction over [the wife] and therefore may not divide the property of the parties located outside the State of Texas and possibly that located within the State of Texas.

*Id.* Section 6.308 of the Family Code now provides:

(a) A court in which a suit for dissolution of a marriage is filed may exercise its jurisdiction over those portions of the suit for which it has authority.

(b) The court's authority to resolve the issues in controversy between the parties may be restricted because the court lacks:

(1) the required personal jurisdiction over a nonresident party in a suit for dissolution of the marriage. . . .

Had Dawson–Austin specially appeared as to the entire proceeding, the district court could not have sustained it except as to the property division claim. The district court had jurisdiction to grant the divorce, and Dawson–Austin could not specially appear to that claim. If the court could sustain the special appearance as to only the one claim and not the other, directing the special appearance only to the claim for which it could be sustained could not be a general appearance.

**E**

Finally, Austin argues and the court of appeals held that Dawson–Austin, by asserting her motion to quash service of process at the conclusion of the hearing on her special appearance, made a general appearance before filing her amended special appearance the next day. The record does not support this argument.

■ Again, it must be recalled that Austin, not Dawson–Austin, requested the hearing on the motion to quash, along with the special appearance and Dawson–Austin's other matters, and insisted on going forward. Dawson–Austin did not raise any of the matters at the hearing; on the contrary, Dawson–Austin, as has been noted, repeatedly requested a postponement as to all of them. As soon as the district court overruled Daw-

son–Austin's special appearance, the following colloquy occurred:

[Austin's Attorney]: Your Honor, if I may, I would like to proceed on their— They have a motion before the Court to quash the process in this case, and I—

THE COURT: Let me ask you this. We don't get that a lot, but I thought that under the rules if you filed a Motion to Quash the service of process and the Court quashes the service of process, then that day becomes the day you're served, and then you have the Monday next after the expiration of twenty days for service from that day to file your Answer.

[Austin's Attorney]: Process is moot at this point.

THE COURT: But they have already filed their Answer.

[Austin's Attorney]: Process is moot at this point because they filed an Answer. So actually we don't need to approach that question.

THE COURT: Okay, I agree. Do you disagree with that?

[Dawson–Austin's Attorney]: Yes, Your Honor, because there's no—the construction of pleadings is that you can have it all contained in the same pleadings.

THE COURT: No, I'm not talking about that. I'm talking—I'm only talking about the Motion to Quash the Citation. If you have a bad citation and you come into court and get the citation quashed, then the day the Court quashes your citation is the day you're served.

[Dawson–Austin's Attorney]: That's right.

THE COURT: Right?

[Dawson–Austin's Attorney]: So we—

THE COURT: Then you have until the Monday next to file an Answer.

[Dawson–Austin's Attorney]: Plus twenty.

THE COURT: Am I with you? Or are you with me?

[Dawson–Austin's Attorney]: Yes, Your Honor.

THE COURT: But she's already filed.

[Dawson–Austin's Attorney]: Well, Your Honor, if it's bad service—if it's a bad service, then—and that's the way the motion is presented to the Court that it's a bad service, and if you were to quash it today, then she would have twenty days plus a Monday to enter the Answer, because—

THE COURT: I wouldn't be quashing her general denial. She's already filed a general denial.

[Dawson–Austin's Attorney]: She hasn't waived, Your Honor, unless the Court is ruling that she waived it, that by presenting it in a pleading to the Court.

THE COURT: Oh, that the general denial is subject to the ruling?

[Dawson–Austin's Attorney]: Yes, Your Honor.

THE COURT: Well, I don't think that waived it, but I think the fact that—I think that the intrinsic deficiencies in her Special Appearance waives it. I think she does become here at that point.

[Austin's Attorney]: Your Honor, then that being the case, that was the only other motion we wanted to urge today.

As the record shows, Dawson–Austin's counsel did not raise or argue the motion to quash or any other matter. Austin's counsel raised the motion to quash, and the court ruled it moot without a word from Dawson–Austin's counsel. Only then did the court ask Dawson–Austin's counsel whether he agreed, and he essentially conceded. Nothing else transpired before the filing and hearing of Dawson–Austin's amended special appearance. Thus, the district court properly considered the special appearance on the merits.

### III

#### A

However, the district court erred in overruling Dawson–Austin's amended special appearance. Section 6.305(a) of the Family Code provides:

If the petitioner in a suit for dissolution of a marriage is a resident or a domiciliary of this state at the time the suit for dissolution is filed, the court may exercise personal jurisdiction over the respondent or over the respondent's personal representative although the respondent is not a resident of this state if:

(1) this state is the last marital residence of the petitioner and the respondent and the suit is filed before the second anniversary of the date on which marital residence ended; or

(2) there is any basis consistent with the constitutions of this state and the United States for the exercise of the personal jurisdiction.

TEX. FAM.CODE § 6.305(a) (formerly TEX. FAM.CODE § 3.26(a)). Austin had been domiciled in Texas exactly six months to the day when he filed suit for divorce. *See id.* § 6.301 ("A suit for divorce may not be maintained in this state unless at the time the suit is filed either the petitioner or the respondent has been ... a domiciliary of this state for the preceding six-month period ....") (formerly TEX. FAM.CODE § 3.21). Dawson–Austin, however, neither was nor ever had been a Texas resident. Thus the district court did not have in personam jurisdiction over Dawson–Austin unless it was under Section 6.305(a)(2).

■ The United States Constitution permits "a state court [to] take personal jurisdiction over a defendant only if it has some minimum, purposeful contacts with the state, and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." *CMMC v. Salinas,* 929 S.W.2d 435, 437 (Tex.1996) (citing cases); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Dawson–Austin had no "minimum, purposeful contacts" with Texas. At the time Austin filed suit, Dawson–Austin resided in California, as Austin's petition itself alleged. She was served in California. At the hearing on her amended special appearance, she testified unequivocally and without contradiction from Austin that her only contact with the State of Texas had been to attend a business convention nine or ten years earlier. She had never lived in Texas, and Austin had not lived here before March 1992. There was no basis for the district court to exercise person-

al jurisdiction over Dawson–Austin, and Austin does not contend otherwise.

**B**

Even though the district court did not have in personam jurisdiction over Dawson–Austin, it is possible under the United States Constitution, and thus under Texas law, for the court to have had jurisdiction to divide the marital estate located in Texas. The property in Texas in which the parties claimed an interest was Austin's Dallas home and Texas bank accounts, which the parties agreed was community property, and the stock certificate evidencing Austin's shares in Starkey. As we have previously stated, Austin contends that his Starkey stock is separate property, while Dawson–Austin claims that she is entitled under Minnesota law to part of the increase in value of the stock attributable to her and Austin's efforts during marriage.

In *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877), the United States Supreme Court held that a state court could exercise jurisdiction over property within the state's borders and determine the rights and interests of non-residents. But in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), the Court abandoned this position and concluded instead that jurisdiction over property, like jurisdiction over persons, must be based on minimum, purposeful contacts and must not offend traditional notions of fair play and substantial justice:

> The fiction that an assertion of jurisdiction over property is anything but an assertion of jurisdiction over the owner of the property supports an ancient form without substantial modern justification. Its continued acceptance would serve only to allow state-court jurisdiction that is fundamentally unfair to the defendant.

We therefore conclude that all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny.

*Id.* at 212, 97 S.Ct. at 2584. *Shaffer* was a shareholder derivative suit against officers and directors of two Delaware corporations. A Delaware court sequestered defendants' stock in the corporations, even though nei-

ther defendants nor their stock were physically present in Delaware, basing its jurisdiction to do so on a Delaware statute that deemed Delaware the situs of ownership of all stock in Delaware corporations. *Id.* at 192, 97 S.Ct. at 2573. The Supreme Court held that neither defendants nor their stock had sufficient contacts with Delaware to justify the state court's exercise of jurisdiction over them. *Id.* at 213–217, 97 S.Ct. at 2584–2587.

In the present case, the location in Texas of property that either is or is claimed to be part of the marital estate does not supply the minimum contacts required for the court to exercise jurisdiction over Dawson–Austin. Austin bought his Dallas home, opened his Texas bank accounts, and brought his Starkey stock certificate to Texas after he separated from Dawson–Austin. We do not believe that one spouse may leave the other, move to another state in which neither has ever lived, buy a home or open a bank account or store a stock certificate there, and by those unilateral actions, and nothing more, compel the other spouse to litigate their divorce in the new domicile consistent with due process. One spouse cannot, solely by actions in which the other spouse is not involved, create the contacts between a state and the other spouse necessary for jurisdiction over a divorce action. *See In the Interest of S.A.V.,* 837 S.W.2d 80, 83–84 (Tex.1992) (holding that without personal jurisdiction over one parent, a court could still decide custody of a child living in the State, but could not determine support and visitation). Moreover, Dawson–Austin's claim to a part of the value of the Starkey stock is completely unrelated to the situs of the certificate; rather, it is based on the parties' efforts to increase the value of Starkey, most of which occurred in Minnesota. In no sense can it be said that Dawson–Austin ever "purposefully availed" herself of the privilege of owning property in this State. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183–2184, 85 L.Ed.2d 528 (1985) (citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–1240, 2 L.Ed.2d 1283 (1958)).

Thus, the district court lacked jurisdiction to adjudicate Dawson–Austin's claim to part of the value of the Starkey stock or to divide the marital estate.

\* \* \* \* \*

The district court had jurisdiction only to grant a divorce and not to determine the parties' property claims. Accordingly, the judgment of the court of appeals is reversed and the case is remanded to the district court for rendition of judgment divorcing Austin and Dawson–Austin and dismissing all other claims for relief for want of jurisdiction.

BAKER, Justice, joined by ENOCH and ABBOTT, Justices, dissenting.

I respectfully dissent. After determining that it had jurisdiction, the trial court dissolved the parties' marriage, characterized Austin's Starkey Corporation stock as his separate property, and distributed about fifty-five percent of the community estate to Dawson–Austin and about forty-five percent to Austin. The court of appeals affirmed the trial court's judgment.[1] I would affirm the court of appeals.

## I. BACKGROUND

Austin is the president of Starkey Laboratories, a Minnesota corporation. He owns sixty shares of Starkey stock, representing 100 per cent ownership. Austin owned the Starkey stock before he married Dawson–Austin. When Austin and Dawson–Austin married, they were domiciled in Minnesota. After continuing marital discord, they separated. There are no children of the marriage. Consequently, jurisdiction under Chapters 102, 152 or 159 of the Texas Family Code is not at issue.

The parties remained domiciled in Minnesota until just before this suit. In February 1992, Dawson–Austin moved to California. In March 1992, Austin moved to Texas. Dawson–Austin filed for divorce in California, but she did not obtain service on Austin for several months. After residing in Texas for six months, and before Dawson–Austin served him in the California divorce action, Austin filed for divorce in Texas. Austin had Dawson–Austin served four days later.

In response to Austin's petition, Dawson–Austin filed, in one instrument: (1) a special appearance; (2) a motion to quash service of citation; (3) a plea to the jurisdiction; (4) a plea in abatement; and (5) subject to all of these, a general denial. On the day of the hearing for these motions, Dawson–Austin filed a motion for continuance. The trial court denied the motion for continuance, denied the special appearance because it was not verified, and proceeded to hear Dawson–Austin's motion to quash, which it also denied. The next day, Dawson–Austin amended her special appearance and moved for reconsideration. After another hearing a few days later, the trial court denied Dawson–Austin's motion for reconsideration.

## II. SPECIAL APPEARANCE

The court of appeals held that the trial court properly overruled Dawson–Austin's original special appearance because it was unverified, and therefore defective. The court of appeals also held that because Dawson–Austin made a general appearance to argue other matters before filing her amended special appearance, the trial court properly overruled Dawson–Austin's amended special appearance and acquired jurisdiction. Dawson–Austin argues that the court of appeals erred when it held that she waived her special appearance by arguing her motion to quash after the trial court overruled her original special appearance.

### A. RULE 120a

An objection to a Texas court's exercise of jurisdiction over a nonresident must be made by special appearance filed under Rule 120a of the Texas Rules of Civil Procedure. Rule 120a requires "strict compliance." *See Portland Sav. & Loan Ass'n v. Bernstein*, 716 S.W.2d 532, 534 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). A special appearance must be made and determined on sworn motion prior to any other plea, pleading, or motion that seeks affirmative relief. *See* TEX.R. CIV. P. 120a(1) and (2); *Liberty En-*

---

1. Justice Chapman dissented without an opinion.

ters., Inc. v. Moore Transp. Co., 690 S.W.2d 570, 571–72 (Tex.1985). Any appearance not in compliance with Rule 120a is a general appearance. See Tex.R. Civ. P. 120a(1); Portland Sav. & Loan Ass'n, 716 S.W.2d at 534; see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)("the personal jurisdiction requirement is a waivable right"). When a party generally appears, the trial court can exercise jurisdiction over the party without violating the party's due process rights. See Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 201 (Tex.1985); see also Tex. Fam.Code § 6.305(a) (formerly Tex. Fam. Code § 3.26(a)).[2]

A party may amend a special appearance. However, the party must not seek affirmative relief on any question other than that of the court's jurisdiction between the time it files its original special appearance and its amended special appearance. See Tex.R. Civ. P. 120a(2)(special appearance "shall be heard and determined before … any other plea or pleading may be heard."); see also Liberty Enters., 690 S.W.2d at 571–72. Any intervening appearance to invoke the trial court's judgment about a "question other than the court's jurisdiction" is a general appearance. See Moore v. Elektro–Mobil Technik GmbH, 874 S.W.2d 324, 327 (Tex. App.—El Paso 1994, writ denied); Investors Diversified Serv., Inc. v. Bruner, 366 S.W.2d 810, 815 (Tex.Civ.App.—Houston 1963, writ ref'd n.r.e.).

### B. ANALYSIS

Because Dawson–Austin's original special appearance was not sworn, it was defective. See Tex.R. Civ. P. 120a(1). While Rule 120a allows for amendment, any amendment to cure a defective special appearance must be accomplished before arguing other matters. See Tex.R. Civ. P. 120a(2). Dawson–Austin did not amend her special appearance until after she argued other matters, namely her motion to quash and about discovery related to that motion. By doing so, Dawson–Austin invoked the trial court's jurisdiction and generally appeared. See Tex.R. Civ. P. 120a(1) and (2); see also Elektro–Mobil Technik GmbH, 874 S.W.2d at 327; Portland Sav. & Loan Ass'n, 716 S.W.2d at 535.

Dawson–Austin argues that because she sought a continuance before the hearing on her original special appearance, she could present her other motions before amending her special appearance. I would reject this argument. I generally agree that a motion for continuance is not a general appearance. A continuance would allow a party to amend its special appearance under Rule 120a. A continuance request for that purpose in no way invokes the trial court's judgment about anything other than the court's jurisdiction. See Elektro–Mobil Technik GmbH, 874 S.W.2d at 327. However, that is not what occurred in this case. Dawson–Austin did not seek a continuance to cure her defective special appearance, but instead contended that she needed time to take depositions to support her motion to quash.[3] Regardless, Dawson–Austin did not provide the court of appeals with any briefing about whether the trial court improperly denied her a continuance. 920 S.W.2d at 782. She did not raise the issue in this Court.

Also, like the court of appeals, I reject Dawson–Austin's argument that she should be excused from arguing her motion to quash because Austin set the hearing. Dawson–Austin did not object to the trial court pro-

---

**2.** Section 6.305(a) provides:

If the petitioner … is a resident or a domiciliary of this state at the time the suit for dissolution is filed … the court may exercise personal jurisdiction over the respondent … although the respondent is not a resident of this state if:

(1) this state is the last marital residence of the petitioner and the respondent and the suit is filed before the second anniversary of the date on which the marital residence ended; or

(2) there is any basis consistent with the constitutions of this state and the United States for the exercise of the personal jurisdiction.

Tex. Fam.Code § 6.305(a)(formerly Tex. Fam.Code § 3.26(a)).

**3.** Austin argues that although Rule 120a allows for a continuance for discovery, including depositions, the rule only allows for discovery about the disputed issue of personal jurisdiction. See Portland Sav. & Loan, 716 S.W.2d at 535; Tex.R. Civ. P. 120a(3). I agree. As a policy matter, litigants should not engage in discovery on the merits of other issues until the special appearance is decided.

ceeding with her motion to quash or indicate to the trial court that she wanted to amend her special appearance before proceeding further. By arguing her motion to quash before amending her special appearance, Dawson–Austin committed a fatal procedural error and therefore generally appeared. *See Kawasaki Steel Corp.*, 699 S.W.2d at 201, 203. The Court should affirm the court of appeals.

### III. DIVISIBLE DIVORCE

The Court compounds its error today by reversing the trial court's judgment except as to the grant of divorce. Where jurisdiction over the parties is established, Texas law does not allow a "divisible divorce." *See* TEX. FAM.CODE § 7.001 (formerly TEX. FAM.CODE § 3.63(a))("In a decree of divorce ... the court shall order a division of the estate of the parties ...."); *see also Hollaway v. Hollaway*, 792 S.W.2d 168, 170 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Seibert v. Seibert*, 759 S.W.2d 768, 769–70 (Tex. App.—El Paso 1988, writ denied); *Vautrain v. Vautrain*, 646 S.W.2d 309, 314 (Tex.App.—Fort Worth 1983, writ dism'd). Here, because Dawson generally appeared, the trial court had jurisdiction over both parties. Therefore, it properly divided the marital estate.

Only recently, the Legislature codified the divisible divorce concept in cases where the court lacks jurisdiction over a nonresident party in a suit to dissolve a marriage. *See* TEX. FAM.CODE § 6.308 (in a suit to dissolve a marriage, a court may exercise its jurisdiction "over those portions of the suit which it has authority.")(Added by Act of April 3, 1997, 75 th Leg., R.S., ch. 7, § 1 and 4 (eff. April 17, 1997), 1997 Tex. Gen. Laws 8, 27, 43). Because of its effective date, section 6.308 does not apply to this case. *See* Act of April 3, 1997, 75 th Leg., R.S., ch. 7, § 4, 1997 Tex. Gen. Laws 8, 43 ("The change in law made by this Act does not affect a proceeding under the Family Code pending on the effective date of this Act. A proceeding on the effective date of this Act is governed by the law in effect at the time the proceeding was commenced, and the former law is continued in effect for that purpose."). Because

of the prior existing Texas law, and because the trial court had jurisdiction over both parties, it had to divide the marital estate.

The Court cites *Estin v. Estin*, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948), for the proposition that the Supreme Court has recognized the concept of a "divisible divorce" and that it should apply here. *See Estin*, 334 U.S. at 549, 68 S.Ct. at 1218–19. In *Estin*, the wife initially sued for separation in New York. The husband answered, and the New York trial court granted a separation decree and awarded the wife permanent alimony. Two years later, after establishing residency in Nevada, the husband sued for divorce in Nevada. After constructive service (the wife was never personally served and never appeared), the Nevada court granted the husband a divorce. The Nevada divorce decree made no provision for alimony. The husband then stopped making alimony payments. When the wife tried to enforce the New York judgment, the husband argued that the Nevada divorce decree trumped the New York judgment. The New York court rejected his argument. The Supreme Court considered "whether Nevada could under any circumstances adjudicate rights of respondent [the wife] under the New York judgment when she was not personally served or did not appear in the [Nevada] proceeding." *Estin*, 334 U.S. at 547, 68 S.Ct. at 1217–18. The Supreme Court held that under full faith and credit principles, the Nevada court could not adjudicate the wife's rights under the New York judgment, "mak[ing] the divorce divisible...." *Estin*, 334 U.S. at 549, 68 S.Ct. at 1218–19. Thus *Estin* stands for the proposition that, in a case where an out-of-state respondent is not personally served and does not appear, and thus there is no personal jurisdiction, any part of an ex parte divorce decree that purports to affect the respondent's property interests is not enforceable under full faith and credit principles. *See Estin*, 334 U.S. at 542, 68 S.Ct. at 1215; *see also Conlon v. Heckler*, 719 F.2d 788, 794–96 (5th Cir.1983); *Fox v. Fox*, 559 S.W.2d 407, 410 (Tex.Civ. App.—Austin 1977, no writ); *Risch v. Risch*, 395 S.W.2d 709, 711 (Tex.Civ.App.—Houston 1965, writ dism'd). *Estin's* holding does not override section 7.001's command that "the

court shall order a division of the estate of the parties," whenever the court has jurisdiction over the respondent under section 6.305(a). *See* TEX. FAM.CODE § 6.305(a) (formerly TEX. FAM.CODE § 3.26(a)); *see also Ismail v. Ismail,* 702 S.W.2d 216, 221 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Comisky v. Comisky,* 597 S.W.2d 6, 9 (Tex.Civ.App.—Beaumont 1980, no writ); *Butler v. Butler,* 577 S.W.2d 501, 507 (Tex. Civ.App.—Texarkana 1978, writ dism'd).

I agree with the Court that "the district court did not have in personam jurisdiction over Dawson–Austin unless it was under Section 6.305(a)(2) [of the Texas Family Code]." 968 S.W.2d at 326. Indeed, but for her procedural errors, Dawson–Austin may have been able to establish that the trial court did not have in personam jurisdiction over her under section 6.305(a)(2). However, Dawson–Austin's procedural errors resulted in a general appearance which satisfied section 6.305(a)(2)'s requirements. *See Kawasaki Steel Corp.,* 699 S.W.2d at 201, 203; *see also Burnham v. Superior Court,* 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990)(holding that due process clause did not prevent California courts from exercising jurisdiction over nonresident husband served with divorce suit while in California on business trip). Dawson–Austin's general appearance gave the trial court jurisdiction to dissolve the marriage *and* to divide the marital estate, as it was required to do. *See* TEX. FAM.CODE § 7.001.

Because the trial court's jurisdiction was founded on Dawson–Austin's general appearance, the "divisibility" of the divorce turns on Texas law, which, when the court has jurisdiction over the parties, requires the court to divide the marital estate. *See* TEX. FAM. CODE § 7.001; *Hollaway,* 792 S.W.2d at 170; *Vautrain,* 646 S.W.2d at 314. This case should not be decided or "divided" on full faith and credit principles as in *Estin.*

## IV. CONCLUSION

Today the Court permits less than strict compliance with Rule 120a. I believe that Dawson–Austin's efforts to specially appear were flawed. Therefore, she made a general appearance and the trial court properly exercised its jurisdiction. I would affirm the courts below. Because the Court holds otherwise, I dissent.