TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00333-CV






Joe Bob Underwood and Leslie Magee, Appellants



v.



Bri-Ley Sales, Inc., Appellee






FROM THE DISTRICT COURT OF LEE COUNTY, 335TH JUDICIAL DISTRICT


NO. 10,421, HONORABLE HAROLD R. TOWSLEE, JUDGE PRESIDING 







 Appellants Joe Bob Underwood and Leslie Magee bring this limited appeal
complaining about the trial court's grant of appellee Bri-Ley Sales, Inc.'s special appearance. By
five points of error, Underwood and Magee contend the trial court erroneously granted the special
appearance after Bri-Ley filed a motion for reconsideration because (1) the record reflects that
general jurisdiction was established as a matter of law; (2) the granting of the special appearance
was against the great weight and preponderance of the evidence; (3) Bri-Ley had subjected itself
to the jurisdiction of the court by seeking affirmative relief before filing its motion for
reconsideration; and (4) the trial court improperly applied CMMC v. Salinas, 929 S.W.2d 435
(Tex. 1996), retroactively. We will affirm the trial court's order.


BACKGROUND


 This personal injury lawsuit arose after Underwood and Magee, employees of
Reddinger, Inc., suffered injuries during a construction accident in Lee County. Underwood and
Magee sued Bri-Ley and several other defendants. Underwood and Magee alleged that Bri-Ley,
a used equipment dealer in Missouri, sold a 1983 GMC truck equipped with an allegedly defective
Power Skymaster bucket lift to United Leasing Company, an Indiana corporation. United Leasing
purchased the truck specifically to lease it to Reddinger, Inc., an Indiana company doing business
in Texas. Reddinger took delivery of the truck equipped with the bucket lift directly from Bri-Ley
in Missouri when a Reddinger employee went to Missouri and drove the truck to Texas. 
Underwood and Magee alleged that Bri-Ley committed a tort in Texas because it placed the truck
in the stream of commerce knowing that the truck was to be transferred to Texas and knowing that
the bucket lift was defective.

 Bri-Ley filed a special appearance challenging the trial court's exercise of personal
jurisdiction and an original answer subject to the special appearance. Bri-Ley contended that "its
dealings with the equipment involved in the incident made the basis of this lawsuit did not have
any relationship to Texas." Further Bri-Ley argued that the assumption of jurisdiction by the trial
court over it would offend traditional notions of fair play and substantial justice. Underwood and
Magee responded that Bri-Ley placed the defective equipment into the stream of commerce thereby
giving the court specific jurisdiction over Bri-Ley. On March 8, 1996, relying on Salinas v.
CMMC, 903 S.W.2d 138 (Tex. App.--Austin 1995, writ granted), (1) the trial court denied the
special appearance.

 The facts in Salinas are somewhat similar to those in this case. Mr. Salinas, an
employee of Hill Country Cellars, a winery in Cedar Park, Texas, injured his arm while cleaning
a winepress. Salinas sued the manufacturer of the winepress. CMMC filed a special appearance
and claimed the court lacked personal jurisdiction. Hill Country Cellars had ordered the winepress
from KLR Machines, Incorporated, an independent distributor of equipment used in the wine and
juice business. KLR ordered the winepress specifically for Hill Country Cellars from CMMC,
a French manufacturer, instructing CMMC to wire the press for electrical use in the United States. 
KLR also instructed CMMC to arrange for the press to be shipped from its factory in France FOB
to the Port of Houston. CMMC complied and therefore knew the destination of the press was
Texas. Hill Country Cellars took title to the press in Houston and paid for transportation of the
press to its winery. The trial court granted CMMC's special appearance. We reversed the trial
court's decision after concluding that CMMC had minimum contacts with Texas necessary for
specific jurisdiction. We held that since CMMC shipped its product directly to Texas it should
not be surprised if called upon to defend the product in a Texas court. Salinas, 903 S.W.2d at
145. 

 After the trial court denied the special appearance, Bri-Ley filed motions for
affirmative relief, subject to the special appearance, including a motion for summary judgment and
a cross-action against another defendant. On June 20, the trial court granted a partial summary
judgment in favor of Bri-Ley as to some, but not all, of Underwood's and Magee's causes of
action.

 On July 12, the Texas Supreme Court reversed our decision in Salinas and held that
CMMC did not have sufficient minimum contacts with the State of Texas for specific jurisdiction. 
See CMMC v. Salinas, 929 S.W.2d 435 (Tex. 1996). On September 20, in light of the reversal
in CMMC, Bri-Ley filed a motion to reconsider the denial of its special appearance. On October
28, following a hearing, the trial court granted the motion, set aside its prior orders, and granted
the special appearance. 

 The case proceeded to trial against the remaining defendants, and the trial court
signed a final judgment in accordance with the jury's verdict in favor of Underwood and Magee. 
Underwood and Magee timely perfected this limited appeal contending the trial court erred in
granting Bri-Ley's special appearance. 


DISCUSSION


Sufficiency of the Evidence


 Although the parties argued specific jurisdiction in the trial court, in point of error
four, Underwood and Magee contend the trial court erred in granting the special appearance
because Bri-Ley had sufficient and continuous contacts with Texas to support general jurisdiction. 
In point of error five, Underwood and Magee contend the trial court's granting of Bri-Ley's
special appearance was against the great weight and preponderance of the evidence. 

Standard of Review

 The proper standard for reviewing the evidence in a case involving a challenge to
personal jurisdiction is factual sufficiency, not de novo review. See Fish v. Tandy Corp., 948
S.W.2d 886, 891 (Tex. App.--Fort Worth 1997, writ denied); Nikolai v. Strate, 922 S.W.2d 229,
236 (Tex. App.--Fort Worth 1996, writ denied); Hotel Partners v. KPMG Peat Marwick, 847
S.W.2d 630, 632 (Tex. App.--Dallas 1993, writ denied). Thus, we may reverse the trial court's
decision only if its ruling is so against the great weight and preponderance of the evidence as to
be manifestly erroneous or unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re
King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). In reviewing such a point of error, we must
consider and weigh all of the evidence, both the evidence that tends to prove the existence of a
vital fact as well as evidence that tends to disprove its existence. See Cain, 709 S.W.2d at 176;
King's Estate, 244 S.W.2d at 661. 

 A nonresident defendant challenging personal jurisdiction bears the burden of proof
to negate all bases of personal jurisdiction alleged by the plaintiff. Kawasaki Steel Corp. v.
Middleton, 699 S.W.2d 199, 203 (Tex. 1985). 


Constitutional Requirements for Personal Jurisdiction

 A Texas court may exercise personal jurisdiction over a nonresident if two
conditions are met: (1) the Texas long-arm statute authorizes the exercise of jurisdiction; and (2)
the exercise of jurisdiction is consistent with the due process guarantees of the federal and state
constitutions. See Schlobohm v. Schapiro, 784 S.W.2d 355, 356 (Tex. 1990). The long-arm
statute extends personal jurisdiction to nonresident defendants doing business in Texas when the
business conducted by the nonresident in Texas is continuous and systematic, or when litigation
arises out of or is related to the business conducted by the nonresident defendant in Texas. See
Nikolai, 922 S.W.2d 233; see also Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 1997). 
When the cause of action itself arises out of the nonresident defendant's contacts with the state,
only specific jurisdiction may be imposed. See Helicopteros Nacionales de Colombia v. Hall, 466
U.S. 414 (1984). When the nonresident defendant has continuous and systematic contacts with
the state, general jurisdiction may be imposed so that all matters before the court may be
adjudicated. See id. at 414-16; Guardian Royal Exch. Assurance, Ltd. v. English China Clays
P.L.C., 815 S.W.2d 223, 227-28 (Tex. 1991). 

 The Texas Supreme Court has held that the broad language of the "doing business"
requirement allows the long-arm statute to reach as far as the federal constitution permits. See
Guardian Royal, 815 S.W.2d at 226; Schlobohm, 784 S.W.2d at 357. The only limitations placed
on Texas courts in asserting personal jurisdiction over a nonresident defendant are those imposed
by the Due Process Clause of the Fourteenth Amendment. See Helicopteros, 466 U.S. at 413-14. 
Due process requires a showing that the nonresident defendant has purposefully established
"minimum contacts" with Texas and that the maintenance of the suit does not offend "traditional
notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310,
316 (1945); Guardian Royal, 815 S.W.2d at 230-31. 



General and Specific Jurisdiction

 Underwood and Magee contend that the record shows that general jurisdiction was
established. General jurisdiction may be asserted when the cause of action does not arise from or
relate to the nonresident's purposeful conduct within the forum state, but there are continuous and
systematic contacts between the nonresident and the forum state. Guardian Royal, 815 S.W.2d
at 227. When general jurisdiction is asserted, the minimum contacts analysis is more demanding
and requires a showing of substantial activities in the forum state. Id. Finally the assertion of
personal jurisdiction must comport with fair play and substantial justice. It is incumbent upon the
defendant to present a "compelling case that the presence of some consideration would render
jurisdiction unreasonable." Id. at 231. 

 Underwood and Magee argue that because Brian Smith, the owner and president
of Bri-Ley, on several occasions attended equipment auction sales in Texas and made purchases
at these auctions on behalf of Bri-Ley unrelated to the transaction at issue there is a basis for
general jurisdiction over Bri-Ley. Bri-Ley responds that it is a Missouri corporation doing
business in Missouri. It does not and is not required to maintain a registered agent in Texas. It
has no employees or agents in Texas, no bank accounts in Texas and is not a party to any contract
providing for performance in Texas. It owns no property in Texas and it has never committed any
tort in Texas. Bri-Ley contends that it is a small business operating in Missouri that sold a piece
of equipment to an Indiana company which leased it to another Indiana company, that then used
the equipment in Texas. Bri-Ley argues that while it attends auctions in Texas and occasionally
makes purchases at these auctions, such actions do not purposefully subject Bri-Ley to the
jurisdiction of a Texas court. 

 Purchases, even if occurring at regular intervals, are not enough to warrant a State's
assertion of personal jurisdiction over a nonresident corporation in a cause of action not related
to those purchase transactions. Helicopteros, 466 U.S. at 418. In this case, Bri-Ley's attendance
at equipment auctions and occasional purchases are not substantial activities in Texas and do not
constitute the continuous and systematic contacts with Texas sufficient to confer general
jurisdiction. See Guardian Royal, 815 S.W.2d at 227-28; Nikolai, 922 S.W.2d at 233. These
facts do not establish general jurisdiction as a matter of law. 

 The trial court's granting of Bri-Ley's special appearance was not so against the
great weight and preponderance of the evidence as to be manifestly erroneous or unjust. When
the cause of action itself arises out of the nonresident defendant's contact with the forum state
specific jurisdiction may be imposed. Helicopteros, 466 U.S. at 414. The record shows that Bri-Ley bought the truck with the defective bucket lift at an auction in Missouri. Bri-Ley then sold
the truck to an Indiana company that leased it to another Indiana company for use in Texas. Bri-Ley only became aware that the truck was destined for use in Texas because, Reddinger, United
Leasing's customer, took delivery of the truck directly from Bri-Ley in Missouri for use in Texas. 

 For a trial court to have specific jurisdiction over a nonresident defendant, that
defendant's contact with the forum state must have resulted from purposeful contacts with the
forum state. Guardian Royal, 815 S.W.2d at 227. A defendant's awareness that the stream of
commerce may or will sweep the product into the forum state does not convert the mere act of
placing the product into the stream into an act purposefully directed toward the forum state. Id. 
Single or even occasional acts are not sufficient to support jurisdiction if, "'their nature and quality
and the circumstances of their commission create only an 'attenuated' affiliation with the forum." 
CMMC, 929 S.W.2d at 439 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 n.18
(1985)). Awareness that the stream of commerce would ultimately carry the truck to Texas shows
only an attenuated connection with the State of Texas and does not support specific jurisdiction.

 Bri-Ley's actions do not constitute purposeful contact with the State of Texas. 
Sufficient evidence supports the trial court's granting of Bri-Ley's special appearance. Bri-Ley
lacked the continuous and systematic contacts necessary to give rise to general jurisdiction and the
purposeful contact with regard to this transaction to give rise to specific jurisdiction. Points of
error four and five are overruled.


Motion to Reconsider Special Appearance


 In points of error one and two, Underwood and Magee contend that Bri-Ley waived
any objections to personal jurisdiction by seeking affirmative relief after the trial court denied the
special appearance on March 8, 1996. Underwood and Magee argue that, when Bri-Ley filed the
motion for summary judgment and the cross-action, Bri-Ley purposefully availed itself of Texas
law and the protection of the court and therefore submitted to the jurisdiction of the trial court. 
Underwood and Magee rely on Dawson-Austin v. Austin, 920 S.W.2d 776, 782 (Tex.
App.--Dallas 1996, writ granted), (2) as authority for the proposition that seeking any affirmative
relief between the first hearing on the special appearance and the reconsideration hearing waived
any objection to the special appearance and subjected Bri-Ley to the jurisdiction of the court. Bri-Ley responds that, pursuant to Texas Rule of Civil Procedure 120a(4), once a court rules on a
special appearance, a party does not waive its special appearance in the cause by seeking
affirmative relief.

 Rule 120a(4) provides in pertinent part:


If an objection to jurisdiction is overruled, the objecting party may thereafter
appear generally for any purpose. Any such special appearance or such general
appearance shall not be deemed a waiver of the objection to jurisdiction when the
objecting party . . . is not amenable to process issued by the courts of this State.



Tex. R. Civ. P. 120a(4). The supreme court reversed the appellate court's decision in Dawson-Austin. See Dawson-Austin v. Austin, 968 S.W.2d 319 (Tex. 1998). The supreme court held that
Rule 120a makes subsequent matters subject to the special appearance without an express statement
to that effect for each matter. See id. at 322. We hold that Bri-Ley's actions were in accordance
with Rule 120a. Bri-Ley sought affirmative relief, subject to the special appearance, only after
the trial court overruled the special appearance. The Texas Supreme Court issued the CMMC
opinion after Bri-Ley obtained a ruling on its summary judgment and before final judgment. 
Because the trial court relied upon the appellate court's decision in CMMC in overruling the
special appearance, Bri-Ley submitted the reconsideration to the trial court to allow it to review
its decision in light of the supreme court's reversal of this court's CMMC opinion. 

 Rule 120a does not specifically address a reconsideration proceeding before a trial
court signs a final judgment. We note that if this case had gone to trial with Bri-Ley as a
defendant, Bri-Ley could appeal a final judgment by contending that the supreme court's decision
in CMMC is grounds for reversing the trial court's denial of its special appearance. It would be,
therefore, incongruous for us to hold that the trial court may not change its decision about a
special appearance ruling before final judgment and that Bri-Ley's only remedy is by appeal. We
hold that Bri-Ley did not waive its right to object to personal jurisdiction by seeking affirmative
relief after the trial court initially overruled its objection to jurisdiction. Points of error one and
two are overruled.


Retroactive Application of Texas Supreme Court Cases


 In point of error three, Underwood and Magee contend the trial court erred in
sustaining Bri-Ley's special appearance on the basis of the supreme court's decision in CMMC
because the trial court erroneously applied the case retroactively. Underwood and Magee contend
that in CMMC the supreme court announced a new rule of law, and therefore the decision applies
only prospectively. Underwood and Magee contend further that a prospective application of
CMMC is not at issue in this case because Bri-Ley invoked the jurisdiction of the trial court by
seeking affirmative relief before the supreme court issued its opinion in CMMC. 

 Texas Supreme Court decisions apply retroactively unless the supreme court
exercises its discretion to modify that application and expresses so in its opinion. See Elbaor v.
Smith, 845 S.W.2d 240, 250 (Tex. 1992) (citing Carrollton-Farmers Branch Indep. Sch. Dist. v.
Edgewood Indep. Sch. Dist., 826 S.W.2d 489, 519-20 (Tex. 1992)) (supreme court declared Mary
Carter agreements void and declared due to fairness and policy considerations case was to be
applied prospectively); Bowen v. Aetna Casualty & Sur. Co., 837 S.W.2d 99, 100 (Tex. 1992)
(noting that Stracener v. United Servs. Auto. Ass'n, 777 S.W.2d 378 (Tex. 1989), corrected a
"misinterpretation of a statute by some courts of appeal" and applied retroactively). In CMMC,
the supreme court did not establish a new rule of law and did not provide that the opinion was to
be applied only prospectively. The trial court did not err in applying CMMC retroactively. Point
of error three is overruled.


CONCLUSION


 We affirm the trial court's order granting Bri-Ley's special appearance.



 

 Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Powers*

Affirmed

Filed: February 19, 1999

Do Not Publish



* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1.   As will be discussed later, the Texas Supreme Court reversed this case. See CMMC v.
Salinas, 929 S.W.2d 435 (Tex. 1996). 
2.   As will be discussed later, the Texas Supreme Court reversed this case. See Dawson-Austin
v. Austin, 968 S.W.2d 319 (Tex. 1998). 



WP="BR1">

Tex. R. Civ. P. 120a(4). The supreme court reversed the appellate court's decision in Dawson-Austin. See Dawson-Austin v. Austin, 968 S.W.2d 319 (Tex. 1998). The supreme court held that
Rule 120a makes subsequent matters subject to the special appearance without an express statement
to that effect for each matter. See id. at 322. We hold that Bri-Ley's actions were in accordance
with Rule 120a. Bri-Ley sought affirmative relief, subject to the special appearance, only after
the trial court overruled the special appearance. The Texas Supreme Court issued the CMMC
opinion after Bri-Ley obtained a ruling on its summary judgment and before final judgment. 
Because the trial court relied upon the appellate court's decision in CMMC in overruling the
special appearance, Bri-Ley submitted the reconsideration to the trial court to allow it to review
its decision in light of the supreme court's reversal of this court's CMMC opinion. 

 Rule 120a does not specifically address a reconsideration proceeding before a trial
court signs a final judgment. We note that if this case had gone to trial with Bri-Ley as a
defendant, Bri-Ley could appeal a final judgment by contending that the supreme court's decision
in CMMC is grounds for reversing the trial court's denial of its special appearance. It would be,
therefore, incongruous for us to hold that the trial court may not change its decision about a
special appearance ruling before final judgment and that Bri-Ley's only remedy is by appeal. We
hold that Bri-Ley did not waive its right to object to personal jurisdiction by seeking affirmative
relief after the trial court initially overruled its objection to jurisdiction. Points of error one and
two are overruled.


Retroactive Application of Texas Supreme Court Cases


 In point of error three, Underwood and Magee contend the trial court erred in
sustaining Bri-Ley's special app