# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00427-CV

**David Michael Johnson, Appellant**

**v.**

**Erin Lynn Johnson, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. FM0-02572, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is a divorce case involving an award of attorney's fees against appellant David Johnson in favor of appellee Erin Johnson and her trial attorney, Patricia English. Although David filed this appeal and English filed a response, Erin did not appear.

In eight issues, David argues that there is insufficient evidence to support certain findings of fact and conclusions of law and that the trial court erred by (1) imposing a lien on his separate property and homestead located at 301 Woodlake Circle, (2) striking his original counterclaim against English, (3) awarding attorney's fees to English pursuant to family code sections 2.501 and 3.201, (4) changing the date of the parties' divorce, (5) awarding attorney's fees to English pursuant to family code section 106.002, (6) failing to forfeit a portion of the attorney's

fees award, (7) excluding the testimony of a witness, and (8) entering finding of fact number twenty-seven against the weight of the evidence and failing to file findings of fact required by family code section 154.130. We will modify the decree and, as modified, affirm.

## BACKGROUND

David and Erin Johnson were married on October 29, 1987. After almost thirteen years of marriage in which the couple had three children, Erin filed for divorce on grounds of insupportability. *See* Tex. Fam. Code Ann. § 6.001 (West 1998). David filed an answer and counter-petition for divorce based on the same grounds. *See id*. At a hearing on February 20, 2001, the trial court announced that the divorce was granted. Erin was appointed sole managing conservator of the children, and David was appointed possessory conservator. A decree was entered, assessing Erin's attorney's fees against David in the amount of $40,000 and stating that the divorce was rendered in court on February 20 but ministerially signed on May 25.

On May 27, David was traveling with a female companion when Erin pulled up next to his car, driving on the shoulder. Two of David and Erin's minor children were in Erin's car. Erin repeatedly swerved her car into David's lane in an apparent attempt to hit his car. A Travis County deputy sheriff happened to be traveling behind David and witnessed the incident. Erin was arrested for assault with a deadly weapon and child endangerment. The children were placed in the custody of David, and on June 5 he moved for a new trial on all issues except the granting of the divorce. The court granted his motion on the issues of custody and conservatorship of the minor children, the division of the marital estate, and attorney's fees. On October 25, Erin filed a jury demand and paid

2

the jury fee.[1]   In November, Erin's divorce attorney, Patricia English, intervened, seeking compensation for unpaid attorney's fees.

Erin and David then settled all issues other than attorney's fees and signed a written agreement, which was filed and subsequently approved by the court.  *See id*. § 7.006 (West 1998) (agreement incident to divorce); *see also* Tex. R. Civ. P. 11.  The agreement recites, in relevant part, that both parties would be appointed joint managing conservators of the three children and that David would assume full ownership of the property located at 301 Woodlake Circle, which would be deeded to him upon his payment of $100,000 to Erin in settlement of the property division.  The parties also agreed that "the issue of attorney's fees is reserved for a bench trial, to be conducted within 120 days and to include Intervenor [English], and any claim the parties have against the other, except that [David] releases his claims against Erin and Erin releases her claims against [David]."  The agreement is signed by both parties and their respective attorneys.

The trial court signed a final decree of divorce on June 25, 2002.  The decree states that the parties were divorced as of June 13, as ordered in open court on that date.  David's motion for new trial, which was subsequently denied, as well as his entry into bankruptcy in September, extended the court's plenary jurisdiction over the case.  *See* Tex. R. Civ. P. 329b; *In re Southwestern Bell Tel. Co.*, 35 S.W.3d 602, 604 (Tex. 2000) (when defendant files bankruptcy, automatic stay goes into effect and abates any judicial proceeding against that party).  Following a hearing on post-

---

[1]  On November 20, the non-jury setting was struck.

judgment motions,[2] an amended final decree was signed on December 10, 2002.[3] Findings of fact and conclusions of law were subsequently requested by David and filed by the trial court. This appeal followed.

## DISCUSSION

In eight issues, David argues that the trial court erred by (1) imposing a lien on his separate property and homestead located at 301 Woodlake Circle, (2) striking his original counterclaim against English, (3) awarding attorney's fees to English pursuant to family code sections 2.501 and 3.201, (4) changing the date of the parties' divorce, (5) awarding attorney's fees to English pursuant to family code section 106.002, (6) failing to forfeit a portion of the attorney's fees award, (7) excluding the testimony of a witness, and (8) entering finding of fact number twenty-seven against the weight of the evidence and failing to file findings of fact required by family code section 154.130.

The crux of David's arguments relate to whether the trial court properly held him liable for attorney's fees that he did not personally incur and whether the resulting judgments were properly secured by an equitable lien, vendor's lien note, and owelty lien deed of trust related to property located at 301 Woodlake Circle. We will begin by discussing threshold issues regarding the effective date of the parties' divorce and the award of attorney's fees.

---

[2] The record is not clear as to what post-judgment motions were heard and addressed in the amended decree.

[3] Finding of fact twenty-nine states that the automatic stay was lifted by the bankruptcy court on December 2, 2002.

**Effective date of the divorce**

Several of David's arguments depend upon the effective date of the parties' divorce. Thus, we will first address his fourth issue alleging that the trial court incorrectly determined the effective date of the divorce as June 13, 2002, rather than February 20, 2001.

The trial court originally pronounced the parties divorced as of February 20, 2001 and signed a decree on May 25, 2001. However, David filed a motion for new trial which was subsequently granted. The final decree states that David's "motion for new trial was granted for all issues other than the divorce itself." Furthermore, "the divorce ordered on February 20, 2001, was interlocutory until the disposition of all issues and order rendered by this court on June 13, 2002, and [] the parties therefore remained married up through that date; accordingly, IT IS ORDERED AND DECREED that ERIN LYNN JOHNSON, Petitioner, and DAVID MICHAEL JOHNSON, Respondent, be and they are hereby divorced as of June 13, 2002, and [] the marriage between them is dissolved by order of the Court announced in open Court on that date." This conclusion is supported by finding of fact twenty-six as well as conclusions of law fourteen and fifteen, which collectively state that the "divorce entered on December [sic] 20, 2001, was interlocutory until the disposition of all issues by order rendered by this court on June 13, 2002, and the parties therefore remained married up to that date," and that "[b]ecause the issues of property and the children had not been disposed of, no final judgment of divorce existed prior to the judgment signed by this court on June 25, 2002." David does not challenge these findings or conclusions, but argues instead that because oral rulings from the bench are valid, the original pronouncement of divorce on February 20, 2001, should stand. *See* Tex. R. Civ. P. 306a. Additionally, he contends that because the grant of divorce itself was not considered in the new trial, its original effective date should remain undisturbed.

5

When a motion for new trial is granted, the previous "final judgment" is no longer effective. *See Old Republic Ins. Co. v. Scott*, 846 S.W.2d 832, 833 (Tex. 1993). Furthermore, it is well settled that the division of a marital estate is not a claim severable from the rest of a divorce proceeding. *Dawson-Austin v. Austin*, 968 S.W.2d 319, 324 (Tex. 1998); *see* Tex. Fam. Code Ann. § 7.001 (in decree of divorce, court shall order division of estate of parties); *see also Vautrain v. Vautrain*, 646 S.W.2d 309, 314 (Tex. App.—Fort Worth 1983, writ dism'd).

As a matter of law, when David's motion for new trial was granted, the prior pronouncement of the effective date of the divorce became ineffective. *See Scott*, 846 S.W.2d at 833. Because the grant of divorce itself cannot be severed from the division of the marital estate and legal issues involving the couple's children, the parties remained legally married until June 13, 2002. *See Austin*, 968 S.W.2d at 324; *see also* Tex. Fam. Code Ann. § 7.001; *Dunn v. Dunn*, 439 S.W.2d 830, 832-33 (Tex. 1969) (oral judgment by court is valid; written judgment signed by trial judge is not prerequisite to finality of judgment). Therefore, the trial court did not err by determining that the effective date of the divorce was June 13, or by considering evidence of events which occurred subsequent to February 20, 2001. We overrule David's fourth issue.

We will now consider the main issue on appeal—whether the trial court properly awarded attorney's fees against David in favor of English.

**Attorney's fees**

The parties' arguments regarding attorney's fees revolve around three sections of the family code: 2.501, 3.201, and 106.002. *See* Tex. Fam. Code Ann. §§ 2.501 (duty to support), 3.201 (spousal liability), 106.002 (attorney's fees in suit affecting parent-child relationship) (West 2002).

6

First, David does not dispute the general application of section 106.002, but argues that it is inapplicable in this case because (1) issues related to the children had been resolved by February 20, 2001, (2) Erin was not a prevailing party entitled to attorney's fees, and (3) the attorney's fees should have been segregated between issues relating to the children and those relating to property. *See id*. §§ 101.032 (West 2002) (defining "suit affecting the parent-child relationship"), 106.002; *see also London v. London*, 94 S.W.3d 139, 146 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (trial court has discretion to award reasonable attorney's fees in suit affecting parent-child relationship).

In suits affecting the parent-child relationship, the court may render judgment for reasonable attorney's fees and expenses and order the judgment and postjudgment interest to be paid directly to an attorney. *See id*. § 106.002. A divorce proceeding involving custody of children includes a suit affecting the parent-child relationship. *See Capellen v. Capellen*, 888 S.W.2d 539, 545 (Tex. App.—El Paso 1994, writ denied). An unsuccessful party may be awarded reasonable attorney's fees under section 106.002 when the record shows that the attorney's fees were necessary and were performed for the benefit of the child. *Marichal v. Marichal*, 832 S.W.2d 797, 799 (Tex. App.—Houston [14th Dist.] 1992, no writ); *see Drexel v. McCutcheon*, 604 S.W.2d 430 (Tex. Civ. App.—Waco 1980, no writ).

On page twenty-one of the final divorce decree, the trial court awarded $40,000 in attorney's fees to English. In doing so, the court found that (1) Erin incurred $40,000 in reasonable and necessary attorney's fees, (2) payment was owing and past due, and (3) judgment should be rendered in favor of English and against Erin. The court also found that

7

such attorney services and fees were necessaries furnished for the support of ERIN LYNN JOHNSON and the children the subject of this suit and that DAVID MICHAEL JOHNSON failed to pay or provide them. Accordingly, the Court finds that DAVID MICHAEL JOHNSON should be and is personally liable to both ERIN LYNN JOHNSON and PATRICIA A. ENGLISH for such fees. The court further finds pursuant to Section 106.002 of the Texas Family Code that such debt is enforceable by PATRICIA A. ENGLISH in her own name.

The record in this case supports a finding that the attorney's fees were necessary and were performed for the benefit of the children. *See* Tex. Fam. Code Ann. § 106.002; *Marichal*, 832 S.W.2d at 799. English testified at the final hearing that, in addition to her representation of Erin, she represented the children in the divorce.[4] We disagree with David's assertion that issues related to the children had been completely resolved by February 2001. The final decree in this case, signed

---

[4] English's written agreement with Erin was introduced into evidence. David objected to English's testimony that she represented the children, asserting that the parole evidence rule precluded evidence of oral agreements outside the four corners of the contract regarding representation of Erin in the divorce. *See Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 732 (Tex. 1981). Parole evidence is inadmissible if it will vary or contradict a writing intended by the parties as a final and complete expression of their agreement, provided the writing is not ambiguous. *See Carr v. Christie*, 970 S.W.2d 620, 623 (Tex. App.—Austin 1998, pet. denied).

The written agreement references "In the Matter of the Marriage of Erin Lynn Johnson and [David] Michael Johnson, and In the Interests of [N.J.], [H.J.], and [E.J.], Minor Children." David points out that the second paragraph states that the retainer fee does not include contested child custody issues. However, the agreement does not preclude representation of the best interests of the children, exclusive of issues that are contested. Furthermore, evidence that English had an agreement with Erin regarding her representation in the divorce does not render inadmissible English's testimony of a subsequent and separate oral agreement regarding representation of the children. *See Hobbs Trailers v. J. T. Arnett Grain Co., Inc.*, 560 S.W.2d 85, 87 (Tex. 1977) (considering law regarding parole evidence, collateral contract may stand so long as it is not inconsistent with another contract); *see also Hubacek v. Ennis State Bank*, 159 Tex. 166, 170 (Tex. 1958) (parole evidence does not preclude enforcement of prior or contemporaneous agreements which are collateral to integrated agreement and which are not inconsistent with and do not vary or contradict express or implied terms or obligations thereof).

8

in 2002, contains over ten pages of details regarding possession and care of the couple's children. Furthermore, provisions of the decree regarding conservatorship of the children changed between the 2001 and 2002 decrees.[5]

David also argues that the attorney's fee award is inappropriate because Erin's conduct caused the filing of the motion for new trial. However, in the final decree, David was awarded attorney's fees against Erin related to the time period after he filed the motion for new trial and before the final decree was entered. Erin did not appeal that award. Clearly, the $40,000 in attorney's fees assessed against David was for services incurred prior to the filing of the motion for new trial.

Additionally, David's argument that Erin was not a prevailing party is irrelevant because section 106.002 does not require Erin to prevail in order to collect attorney's fees. *See* Tex. Fam. Code Ann. § 106.002; *Marichal*, 832 S.W.2d at 799. Moreover, David did not object at trial regarding segregation of attorney's fees between children and property issues. Thus, he failed to preserve any error related to the failure to segregate. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997); *Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex. 1988); *see* Tex. R. App. P. 33.1. We overrule David's sixth issue.

---

[5] David also contends that he was found liable for fees incurred after the original decree was pronounced in February 2001. In February, the court found that Erin had "incurred $40,000 as of February 20, 2001, as attorney's fees" and awarded Erin a judgment of $40,000 against David, for the benefit of English. The final decree on appeal does not award English anything in addition to the $40,000 David was originally ordered to pay. Furthermore, the arbitration report, signed April 11, 2001, values the attorney's fees, expert witness fees, and litigation expenses incurred by Erin at $40,000.

9

Because we find that family code section 106.002 provided the trial court a proper basis on which to order David to pay attorney's fees to Erin and English, we do not reach David's third issue regarding the propriety of the award pursuant to sections 2.501 or 3.201 of the family code.

**Characterization of attorney's fees as child support**

David also contends that the trial court erred by awarding attorney's fees of "$40,000 as past due child and spousal support" to English.

We review *de novo* an award of attorney's fees as child support. *Finley v. May*, 154 S.W.3d 196, 199 (Tex. App.—Austin 2004, no pet.). With the exception of child support enforcement actions, attorney's fees may only be awarded as costs enforceable by debt. *See* Tex. Fam. Code Ann. § 106.002; *May*, 154 S.W.3d at 199. Texas law prohibits imprisoning a person for debt. Tex. Const. art. I, § 18; *see May*, 154 S.W.3d at 199. However, attorney's fees awarded as child support are not viewed as debt and may be enforced by contempt. Tex. Fam. Code Ann. § 157.167 (West Supp. 2005). Moreover, characterizing fees as child support permits the trial court to issue an order withholding earnings for such fees. *Id*. § 158.0051 (West 2004).

English is a third-party who is not entitled to attorney's fees in the nature of child support. We sustain David's eighth issue and modify the judgment to delete the characterization of an award of attorney's fees in the nature of child support.

**Failure to forfeit attorney's fees**

In his fifth issue, David argues that a portion of the attorney's fees award should have been forfeited as the result of a violation of the disciplinary rules. Gayle Cipriano, an attorney, was

10

hired by English to assist in her representation of Erin in the divorce proceedings. Subsequently, English hired Cipriano to assist her in suing Erin for recovery of English's attorney's fees. After David filed a motion to disqualify Cipriano, *see* Tex. R. Disciplinary P. 1.06(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A-1 (West 1998), English hired a new attorney.[6] On appeal, David argues for the first time that because Cipriano's fees were improperly included in the $40,000 attorney's fee award against him, the issue should be remanded for a determination of how much of the fee is attributable to Cipriano's allegedly improper representation. However, David failed to preserve any error regarding this issue because he did not object to the introduction of the billing records, which included time submitted by and paid to Cipriano. *See* Tex. R. App. P. 33.1. Furthermore, the issue was not raised in his motion for new trial. We overrule David's fifth issue.

Having found that the trial court properly awarded attorney's fees in favor of English, we next consider whether the award was properly secured.

**Motion for judicial notice of deed**

As a preliminary matter to determining whether it was proper to secure the attorney's fee award by imposing a lien on the Woodlake Circle property, David urges us to take judicial notice of a notarized, recorded, and certified warranty deed relating to this property. The deed is dated April 26, 2002, and reflects that Erin conveyed to David her interest in "Lot 11, Block B, WOODLAKE TRAILS, a subdivision in Travis County, Texas, according to the map or plat thereof recorded in Volume 69, Page 49, Plat Records of Travis County, Texas" (301 Woodlake Circle).

---

[6] Although the motion to disqualify is not in the record, we have gathered the facts from David's testimony and the briefs.

11

David contends that the deed evidences that the property became his homestead upon a transfer from Erin to him. Although David testified at the trial in June 2002 that he borrowed money to refinance the house after Erin conveyed her interest in the house to him, he explains that the deed was unavailable at the time of trial because it was being processed. Erin did not respond to the motion for judicial notice or file a brief in this case, but English argues that the motion should be denied because it was not accompanied by an affidavit of authenticity and was not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See* Tex. R. Evid. 201.

We disagree. The deed reflects on its face that it is a certified document that was recorded with the county clerk of Travis County. The deed meets the requirements of rule 201, and we will take judicial notice of it. *See id*. We grant David's motion and will consider the merits of his claims.

**Lien on property to secure award of attorney's fees**

David argues that the equitable lien, vendor's lien note, and owelty lien deed of trust were improper because 301 Woodlake Circle is his homestead, as evidenced by the deed.

English argues that 301 Woodlake Circle was not David's homestead, that there was no finding of fact that it was his homestead, and that the evidence does not conclusively establish that it was his homestead. We disagree.

In addition to the deed in which Erin conveyed her interest in the property to David, David testified at trial that he had paid Erin for the property, that she had conveyed her interest to him, and that he had recently refinanced the mortgage on the house in his name. Significantly, the

12

final decree awards David the property as his sole and separate property and describes it as his homestead. On page twenty-two of the decree, an equitable lien is created against the property, and the decree recites that the "amount secured is limited to the amount of homestead interest awarded to [David] and is to compensate [Erin] for her interest in the homestead." On page twenty-three, the decree establishes an encumbrance for owelty partition and states that the court had already "awarded the family homestead of the parties to [David]." In the next sentence, it "is ordered and decreed that an encumbrance for owelty of partition is imposed against the entirety of the homestead property," described as 301 Woodlake Circle. Furthermore, there is evidence in the record that 301 Woodlake Circle was the only real property owned by the parties; that it was the home address listed on Erin's contract for representation and billing invoices submitted by English; and that in 1996, the parties listed it as their home address on a tax return. There was sufficient evidence that the property located at 301 Woodlake Circle was David's homestead.

A homestead is exempt from seizure for the claims of creditors except for encumbrances properly fixed on homestead property. Tex. Prop. Code Ann. § 41.001 (West Supp. 2005). The legislature has specified seven circumstances under which an encumbrance may be properly fixed. *See id.* § 41.001(b). Furthermore, the Texas Constitution enumerates certain limited circumstances under which an encumbrance may properly attach to a homestead. *See* Tex. Const. art. XVI, § 50. A lien that is illegally levied against homestead property is void. *See Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 129-130 (Tex. 1991) (*citing Toler v. Fertitta*, 67 S.W.2d 229, 230-31 (Tex. Comm'n App. 1934, judgm't adopted)).

A lien granted to a third-party creditor seeking payment for attorney's fees pursuant to section 106.002 of the family code does not qualify as an encumbrance that is properly fixed on

a homestead pursuant to the property code or otherwise authorized by the Texas constitution. *See* Tex. Const. art. XVI, § 50; Tex. Prop. Code Ann. § 41.001. The court erred in granting a lien of any kind in favor of English on 301 Woodlake Circle.

**Vendor's lien note**

David also contends that the court erred by requiring him to sign a vendor's lien note. The decree recites that

> [David] is ORDERED to sign a vendor's lien note for $40,000.00 payable to [English]. The note shall bear interest at 10 percent per year, compounded annually. It is to be payable according to the following terms: on demand, or if not [sic] demand is made, on or before January 15, 2003.

An unsigned "Real Estate Lien Note" is attached to the judgment. However, English's pleadings do not request relief in the form of ordering David to sign any type of note. Therefore, the court erred by awarding judgment which was not supported by the pleadings. *See Davidow v. Inwood N. Prof'l Group-Phase I*, 747 S.W.2d 373, 377 (Tex. 1988) (pleading held insufficient to support award of affirmative relief).

**Division of community property**

Next, in another section of his first issue, David argues that the trial court erred by failing to implement the parties' settlement agreement, which was approved by the court. Specifically, he asserts that his right to a jury trial was violated because the final decree effectuated a property division not contemplated by the agreement when it awarded Erin an additional $40,000.

14

Section 7.006 of the family code provides that spouses in a divorce case may enter into written agreements concerning the division of the property and the liabilities of the spouses and maintenance of either spouse. *See* Tex. Fam. Code Ann. § 7.006. If the court finds that the terms of the written agreement are just and right, those terms are binding on the court. *Id*.

The parties' agreement, dated March 27, 2002, recites that it is a rule 11 "agreement and contract settling all terms and disputes." In resolving issues surrounding conservatorship of the children and ownership of the parties' property, it states that David would be entitled to the house at "301 Woodlake Circle (deeded to [David] upon full payment of 9.b. below)" and responsible for the mortgage on the house. In section 9.b. of the agreement, Erin is entitled to "[p]roperty division of $100,000 payable by [David] to Erin in cashier's check in the following manner and not dischargeable in bankruptcy." A payment schedule follows, along with a description of the payments. Furthermore, section thirteen is entitled "Final Decree" and states that the "parties will prove up this agreement on March 25, 2002, however, the decree will not be entered until after [David] has made the final payment of $100,000 as set forth above."

The final decree includes a provision stating that

> For the purpose of a just and right division of property made in this decree, IT IS FURTHER ORDERED AND DECREED that Petitioner, ERIN LYNN JOHNSON, is awarded judgment of $40,000.00 against Respondent, DAVID MICHAEL JOHNSON, payable in accordance with the terms of the closing documents ordered in this decree to be executed, with interest at 10 percent per year compounded annually from the date of judgment, for which let execution lie.

> This judgment is part of the division of community property between the parties and shall not constitute or be interpreted to be any form of spousal support, alimony, or child support.

15

> The Court finds that this decree is a partition of the community property of the parties. Because of the nature of the properties making up the estate, the property cannot be divided in a just and right manner without impairing the value of all portions. A vendor's lien note in the amount of $40,000.00 is necessary to make a just and right partition of the property. IT IS ORDERED AND DECREED that an equitable lien is created against [301 Woodlake Circle]. This lien is in the nature of a purchase-money lien. The property described above is a part of this partition order. The entire interest in the property described above is subject to the lien.

David also challenges findings of fact twelve through fourteen, which support this section of the decree. Erin did not file a brief in response, and English's only response to David's argument is that "[a]s can be seen from the Rule 11 Agreement, although [David] received most of the property in the marital estate, its value was obviously very minimal. The trial court therefore was clearly entitled to find, as it did, that it was unable to partition the property so as to give $40,000 in value to [Erin], and hence the decision to require a secured note was well within its discretion." English does not point to any evidence in the record, and we have found none, which would support her conclusion. Although she argues that the court was entitled to find that the property was unable to be partitioned, she mistakes the effect of the parties' agreement, which the court approved, settling all disputes other than attorney's fees. Moreover, English acknowledges that the court approved the agreement and that the only issue submitted to the court was attorney's fees, but states that David "had no issues on characterization and value," thus the court did not make a determination on those issues. We disagree.

The final decree includes a finding that the community property is not susceptible to partition, resulting in an award to Erin of $40,000 as part of the division of community property. That section of the decree directly conflicts with the agreement of the parties regarding division of community property, which was approved by the trial court and is, therefore, binding. *See* Tex. Fam.

16

Code Ann. § 7.006 ("If the court finds that the terms of the written agreement in a divorce or annulment are just and right, those terms are binding on the court."). Furthermore, the fact that a jury request was on file and a jury fee had been paid precluded a subsequent determination by the court, in conflict with the parties' agreement, regarding the characterization of or division of community property. *See* Tex. R. Civ. P. 216 (request and fee for jury trial); *G.M. Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997). The trial court erred by awarding Erin $40,000 as part of a division of community property contrary to the parties' approved agreement. Accordingly, as discussed previously in this opinion, the trial court also erred by securing that award with owelty and vendor's liens, a note, and deed of trust.[7] Therefore, the ordered transfers from Erin to English are also void. We sustain David's first issue.

**David's counterclaim against English**

In his second issue, David argues that the trial court erred by striking his original counterclaim against English. We review the decision for an abuse of discretion. *See Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990).

Texas Rule of Civil Procedure 63 provides that parties "may amend their pleadings, . . . by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed

---

[7] The decree provided that David "is ORDERED to sign an owelty lien deed of trust to secure the note. . . . The purpose of the encumbrance is to secure the payment of the debt of [David] in favor of [Erin] of $40,000.00, as assigned to [English]. The debt shall bear interest at 10 percent per year and shall be payable as follows: Principal and Interest shall be due and payable on January 15, 2003." However, because the court erred in awarding Erin $40,000 in division of the community property, it also erred by granting the owelty lien deed of trust.

only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party." Tex. R. Civ. P. 63. Under rule 63, a trial court has no discretion to refuse an amendment unless the opposing party presents evidence of surprise or prejudice, or the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *Id.*; *Greenhalgh*, 787 S.W.2d at 939. The burden of showing prejudice or surprise rests on the party resisting the amendment. *Greenhalgh*, 787 S.W.2d at 939; *see Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex. 1980). This showing may be based on the trial court's conclusion that the amendment on its face is calculated to surprise or that the amendment would reshape the cause of action, prejudicing the opposing party and unnecessarily delaying the trial. *Id.*

On May 21, 2001, twenty-one days before trial, David filed a counterclaim against English, requesting attorney's fees related to claims brought by English, and asserting a new cause of action against English for "any and all torts she has committed against [David] and his children and for conspiracy to commit various torts against him and his children."[8] English timely moved to strike David's counterclaim, alleging surprise and inadequate time to prepare a defense. *See* Tex. R. Civ. P. 63. David moved for a continuance, which was denied. A bench trial then began as scheduled on June 12. The trial court granted English's motion to strike the tort and conspiracy claims. It subsequently denied English's motion to strike David's request for attorney's fees against

---

[8] At the hearing before the trial court, David explained that the cause of action is related to an allegation that in June 2001, English advised Erin that she was permitted to take possession of the children. Allegedly following English's advice, Erin took possession of the children in Oklahoma, apparently in violation of a court order. English testified that she was not aware that Erin's possession of the children would have been in violation of a court order.

English.[9] Thus, we only consider whether the court abused its discretion by striking David's tort and conspiracy claims against English. *See Greenhalgh*, 787 S.W.2d at 939.

David argues that although English alleged surprise in response to his counterclaim, English did not produce evidence to support her contention. Furthermore, he asserts that his March 27, 2002 letter notified her of his claim and is evidence that she was not surprised by the counterclaim. However, David's counterclaim alleging tort and conspiracy actions against English for advice given to Erin in June 2001 was not related to the issue of whether English was entitled to recover her attorney's fees related to representation of Erin and the children—the sole issue before the court pursuant to the parties' agreement. *See* Tex. Fam. Code Ann. § 7.006. Furthermore, the March 27 letter states that David incurred attorney's fees due to a writ of attachment issued after Erin's possession of the children, and that he was "looking to Ms. English to make him whole in this regard." The letter vaguely suggested settlement of all claims "before Mr. Johnson engages separate counsel to pursue his claims against Ms. English and your law firm." It did not put English on notice of the specific causes of action that would be asserted, aid English in conducting discovery related to the allegations or otherwise serve as notification that she would be required to defend against the allegations.

At the hearing on her motion to strike, English argued that the additional causes of action, which were asserted almost a year after the advice was allegedly given, constituted unfair surprise and were merely David's attempt to delay trial. She claimed that the allegations, if

---

[9] Although David's request for attorney's fees against English was ultimately denied, he does not appeal that finding.

19

permitted, would have to be turned over to her malpractice carrier, who would then "be entitled to have their own lawyers come in and decide who's going to defend the claim."

Under these circumstances, we hold that the district court did not abuse its discretion in determining that the new, substantive amendment would reshape the cause of action, constituting surprise, prejudicing English, and unnecessarily delaying the trial. *See Greenhalgh*, 787 S.W.2d at 939. We overrule David's second issue.

**Exclusion of testimony**

In his seventh issue, David asserts that the trial court improperly excluded the testimony of Deputy Knight. David argues that Deputy Knight's testimony regarding the arrest of Erin for assault with a deadly weapon and child endangerment would have led "a reasonable person to conclude that a trier of fact would not award attorney's fees" against him.

Whether to admit or exclude evidence is within the trial court's sound discretion. *National Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). David's argument at trial primarily revolved around the assertion that he was entitled to attorney's fees from Erin because her conduct on May 27, which the officer would have testified to, caused David to incur attorney's fees in seeking the new trial. However, the trial court did grant David's request for attorney's fees from Erin related to fees incurred by him after May 27. David's only other argument is that the testimony was necessary because the children were in the car that day, and the officer could testify about the danger that they were in. But Erin's conduct is not relevant to our inquiry of whether attorney's fees were correctly awarded as part of a suit affecting the parent-child relationship or whether the fees incurred before May 27 were for the benefit of the children. *See* Tex. R. Evid. 401; *see also* Tex.

20

Fam. Code Ann. § 106.002; *Marichal*, 832 S.W.2d at 799. Thus, the trial court did not abuse its discretion in excluding Deputy Knight's testimony. We overrule David's seventh issue.

**CONCLUSION**

Having sustained David's first issue, we modify the decree to delete: (1) the references to liens, notes, and deeds of trust to secure the attorney's fees owed to English; (2) the award of $40,000 to Erin as a division of community property and any liens, notes or deeds of trust to secure that award; and (3) the characterization of the attorney's fees to English as child support. As modified, we affirm the award of attorney's fees in favor of English against David in the amount of $40,000, and otherwise affirm the decree of the trial court.

_____

W. Kenneth Law, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Modified and, as Modified, Affirmed

Filed:   December 16, 2005