*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# MEMORANDUM OPINION

No. 04-08-00231-CV

Timothy **OOSTVEEN** and Stephanie Oostveen,
Appellants

v.

Helen **MORENO**,
Appellee

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CI-14363
Honorable Gloria Saldana, Judge Presiding

Opinion by:    Alma L. López, Chief Justice

Sitting:    Alma L. López, Chief Justice
         Karen Angelini, Justice
         Phylis J. Speedlin, Justice

Delivered and Filed:   August 20, 2008

AFFIRMED

In this accelerated interlocutory appeal, nonresident defendants, Timothy and Stephanie Oostveen (the Oostveens), challenge the trial court's order denying their special appearance. The Oostveens contend the trial court erred by: (1) deciding the Oostveens waived their special appearance; and (2) improperly applying constitutional jurisdictional standards with regard to minimum contacts. We affirm the trial court's order.

**BACKGROUND**

The Oostveens are Oklahoma residents, and the plaintiff, Helen Moreno, resides in San Antonio, Texas. The Oostveens contacted Moreno in San Antonio and represented that they could transport, house, feed, and care for Moreno's exotic animals while she was recovering from an accident that left her wheelchair-bound. The Oostveens drove to Texas to discuss the agreement with Moreno whereby the Oostveens would take the animals from Texas to Oklahoma, board them, breed them, and split the profits from the offspring with Moreno. After finalizing the agreement in March of 2004, the Oostveens took three pair of marmosets from Texas to Oklahoma. They returned in July of 2004 to pick up a pair of kinkajous and a baby kinkajou. The marmosets produced offspring which were marketed and sold under Moreno's trade name of "Helen's Little Critters," which was registered in Bexar County. The profits were split between the parties.

Eight months later, the marmosets died while housed at the Oostveens' residence in Oklahoma. The Oostveens and Moreno agreed that Moreno would purchase more animals and advance funds to the Oostveens for pen construction and operating expenses. In October of 2005, the Oostveens picked up a trio of kinkajous from Moreno in Texas. Over the course of several months, the Oostveens also picked up animals on behalf of Moreno from other Texas residents. Due to the Oostveens' alleged improper boarding and care of the animals, more of Moreno's animals died in Oklahoma. The Oostveens allegedly made other misrepresentations to Moreno and induced Moreno to provide more funds for the care of the animals.

Eventually, Moreno sued the Oostveens for breach of contract and, alternatively, quantum meruit and promissory estoppel. The Oostveens filed an unverified, pro se motion to dismiss for lack of jurisdiction. After Moreno responded by pointing out a technical error in the Oostveens' motion to dismiss, the Oostveens amended their motion to include a verification and renamed the pleading "Amended Special Appearance & Subject Thereto, Original Answer." After a hearing on

the special appearance, the trial court denied the special appearance without issuing findings of fact or conclusions of law. The Oostveens appeal.

## STANDARD OF REVIEW

In Texas, "[a] special appearance is used to challenge the trial court's jurisdiction over the person or property based on the claim that neither is amenable to process in this state." W. Wendell Hall, *Standards of Review in Texas*, 38 ST. MARY'S L.J. 47, 81 (2006). We may review an interlocutory appeal from a trial court's ruling on a special appearance pursuant to section 51.014 of the Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (Vernon Supp. 2007). Whether a trial court has personal jurisdiction over a defendant is a question of law subject to de novo review. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The plaintiff bears the initial burden to plead "sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute." *Id.* at 793. When nonresident defendants file a special appearance, they are required to negate all bases of personal jurisdiction asserted by the plaintiff. *Id.*

When ruling on a special appearance, the trial court considers the pleadings, affidavits, attachments, stipulations of fact, and any oral testimony submitted by the parties. TEX. R. CIV. P. 120a. The trial court frequently resolves questions of fact before resolving the jurisdictional issue. *BMC Software Belgium*, 83 S.W.3d at 794. When the trial court fails to issue findings of fact or conclusions of law, all facts necessary to support the judgment and supported by the evidence are implied. *Id.* at 795. However, "[w]hen the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency." *Id.* In reviewing the legal sufficiency of the facts, we overrule the challenge if there

is more than a scintilla of evidence to support the finding. *Tempest Broadcasting Corp. v. Imlay*, 150 S.W.3d 861, 868 (Tex. App.—Houston [14th Dist.] 2004, no pet.). When reviewing the factual sufficiency of the findings, we may sustain the challenge only if the trial court's finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Id.*

## ANALYSIS

### A.   Waiver of Special Appearance

In their first issue, the Oostveens assert that they did not waive their special appearance by initially filing an unsworn motion to dismiss for lack of jurisdiction. Prior to the hearing on the special appearance, the Oostveens amended the motion by attaching the proper verifications and renaming the pleading "Amended Special Appearance & Subject Thereto, Original Answer." At the hearing on the special appearance, the Oostveens' counsel presented Texas Supreme Court authority supporting a defendant's ability to amend a challenge to the court's jurisdiction by adding a verification without causing a technical waiver of the special appearance. *See Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998). Rule 120a(1) allows defects in special appearances to be cured. *Id.*; *see also* TEX. R. CIV. P. 120a(1). "The absence of a verification is such a defect, and an amendment that adds a verification cures the special appearance." *Dawson-Austin*, 968 S.W.2d at 322. Because the Oostveens timely amended their special appearance, their first issue is sustained. *See id.*

### B.   Personal Jurisdiction

-4-

Next, the Oostveens contend the trial court erred by improperly applying the applicable jurisdictional standards when it determined that Moreno's claims arose from and related to the Oostveens' purposeful contacts with Texas. Moreno was required to plead sufficient allegations to bring the Oostveens within the long-arm statute of Texas. *See BMC Software Belgium*, 83 S.W.3d at 793. The Oostveens argue that Moreno's live pleadings represent the totality of the conduct that is the subject matter of the suit, and the conduct complained of is the improper housing, feeding, and care of the animals. The Oostveens argue that their conduct of traveling into Texas to contract with Moreno and take possession of the animals is not the conduct complained of in Moreno's suit and, therefore, cannot be used by the trial court to evaluate the Oostveens' minimum contacts with the state. We disagree.

Texas courts may exercise personal jurisdiction over a nonresident if it is (1) authorized by the Texas long-arm statute, and (2) consistent with state and federal due process.[1] *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). Under the federal Due Process Clause, jurisdiction is proper if a nonresident defendant establishes minimum contacts with Texas, and "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotations omitted). A nonresident

---

[1] Texas considers "doing business" in the state by a nonresident defendant sufficient to satisfy the long-arm statute as long as the activities meet the federal due process requirements. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 1997). Although not an exclusive list, the statute provides that a nonresident defendant does "business" in Texas if the nonresident: (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in Texas; (2) commits a tort in whole or in part in this state; and (3) recruits Texas residents, directly or through an intermediary located in Texas, for employment inside or outside this state. *Id.*

defendant's minimum contacts with Texas can give rise to either general or specific jurisdiction.[2] *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996).

### 1.      *Specific Jurisdiction*

Specific jurisdiction is established if (1) the nonresident defendant purposely avails itself of the privilege of conducting business in Texas and (2) the defendant's liability arises from, or is related to, those contacts. *Moki Mac River Expeditions*, 221 S.W.3d at 576. The Oostveens' conduct, whether within or outside of Texas, must have caused the Oostveens to reasonably anticipate being haled into a Texas court. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

### a.      Purposeful Availment

Three principles guide our purposeful availment inquiry. First, we consider only the Oostveens' activities in Texas, not the unilateral activity of Moreno. *Moki Mac River Expeditions*, 221 S.W.3d at 575. Next, those activities must be purposeful and not random or fortuitous. *See id.* Finally, the Oostveens must have sought some benefit, advantage, or profit by availing themselves of the state's jurisdiction. *See id.*

Applying the first principle, Moreno did not contact the Oostveens. The Oostveens contacted Moreno in Texas after finding out about Moreno's accident through "other people" in the industry. The Oostveens induced Moreno to enter into an oral contract in Texas by claiming to "have a lot of knowledge on the care of primates." The Oostveens solicited a business partnership with Moreno

---

[2] Because we conclude the Oostveens have sufficient minimum contacts to establish specific jurisdiction, we do not address general jurisdiction.

in Texas whereby Moreno would pay them to: take the animals to Oklahoma; board, feed, breed, and sell them; and split the profits. *See id.* at 578-79.

Moving to the second principle, the Oostveens' business with Moreno stemmed from their deliberate solicitation of Moreno in Texas by phone and in person. The Oostveens contacted Moreno in Texas, traveled to Texas to negotiate the agreement with Moreno, traveled to Texas on several occasions to pick up animals, and marketed the joint-venture offspring under Moreno's Texas business entity. *See id.* The Oostveens created a continuing relationship with Moreno which included ongoing obligations. *See id.* at 578.

Reviewing the third principle, the Oostveens purposefully availed themselves of the privilege of contracting in Texas, transporting animals through Texas, making profits from a Texas business relationship, and gaining the advantage of Moreno's known reputation as an exotic animal dealer in Texas. *See id.* at 578-79. Upon our review of the facts, the Oostveens satisfied the "purposeful availment" prong of specific jurisdiction by "doing business" with Moreno in Texas. *See id.*

> b.      Substantial Connection

Next, we must decide whether the Oostveens' liability arises from or is related to their contacts with the state. *See id.* at 579. In Texas, we apply a "substantial connection" analysis. *See id.* at 585. This means there must be a substantial connection between the purposeful contact and the operative facts of the litigation, even where a single act supports jurisdiction. *See id.* at 584-85 (citing *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 230 (Tex. 1991)).

In this case, Moreno sued the Oostveens for breach of contract. Moreno and the Oostveens orally agreed that the Oostveens would: (1) transport, board, and care for the animals; (2) locate and

acquire animals that could produce offspring; and (3) reimburse Moreno for funds that she advanced to the Oostveens. The operative facts are: (1) at least six animals that were picked up by the Oostveens in Texas died while in the Oostveens' possession; (2) some of the animals located and acquired by the Oostveens from Texas with Moreno's funds were incapable of reproducing; (3) Moreno's funds, advanced to the Oostveens to build proper pens, were not returned to Moreno in Texas as agreed upon. Although the Oostveens claim that "[t]he record is simply void of evidence of harm arising from anything other than" the care and housing of the animals in Oklahoma, this belies the evidence in the record. There is evidence in the record that the Oostveens contracted for and picked up animals in Texas which later died. The care of the animals was initiated in Texas when the Oostveens took the animals into their possession in Texas and arises from the Oostveens' contacts with the state. Animals located and obtained by the Oostveens in Texas were incapable of producing offspring as represented. Moreno advanced funds to the Oostveens which were never repaid as promised. The Oostveens marketed the offspring from the joint-venture under Moreno's Texas business entity. This is more than a scintilla of evidence to support the trial court's implied finding that the Oostveens' liability arose from or was related to their contacts with Texas, and the evidence is not so against the great weight of the evidence as to be clearly wrong and manifestly unjust. *See Tempest Broadcasting Corp.*, 150 S.W.3d at 868.

## 2. *Fair Play and Substantial Justice*

Because we conclude that the trial court properly applied the law to the facts supporting specific jurisdiction, we now determine whether the assertion of personal jurisdiction comports with fair play and substantial justice. *Id.* at 232. When making this determination, we consider the following factors: "(1) the burden on the defendant; (2) the interests of the forum state in

adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Id.* "Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* at 231. It is, therefore, incumbent upon the defendant to present a compelling case as to why jurisdiction is unreasonable. *Id.*

Because the Oostveens are residents of Texas's neighboring state, Oklahoma, and, by their own admissions, they have made several trips to Texas to conduct business, we cannot say litigation in Texas will be burdensome to them, especially given the fact that Moreno will carry the burden of proof at trial. Furthermore, Texas has an inherent interest in protecting its citizens and providing remedies for their damages; Moreno has a strong interest in obtaining convenient and effective relief for her alleged losses; the interstate judicial system has an interest in efficiently resolving controversies between citizens by continuing the suit in Texas rather than dismissing the suit and allowing it to be re-filed in another forum; and Texas's social policies of protecting its citizens' contractual rights and promoting the humane treatment of animals will be furthered by Texas's exercise of jurisdiction over the Oostveens. Finally, the Oostveens presented no compelling argument as to why jurisdiction in Texas would be unreasonable if minimum contacts were established. After a careful analysis of these factors, we conclude that the assertion of personal jurisdiction over the Oostveens comports with fair play and substantial justice. *See id.* at 231-232. The Oostveens' second issue is overruled.

**CONCLUSION**

For the reasons discussed above, we affirm the trial court's order denying the Oostveens'

special appearance.

Alma L. López, Chief Justice